IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIANA WINDLEY, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>           -against-<br><br>STARION ENERGY, INC., STARION ENERGY NY, INC., STARION ENERGY PA, INC., ROBERT ZAPPONE, and DOES 1-10<br><br>                    Defendants. | CLASS ACTION COMPLAINT<br><br>JUDGE PAULEY<br>JURY TRIAL DEMANDED<br><br>14 CV 9053 |

Plaintiff Diana Windley brings this action in her individual capacity and on behalf of a class of persons defined below, and alleges for her complaint, as follows:

## OVERVIEW OF DEFENDANTS' WRONGFUL ACTS AND BASIS OF THIS ACTION

1.      This lawsuit arises from Defendants' Starion Energy Inc., Starion Energy NY, Inc., and Starion Energy PA, Inc. (together "Defendants," "Starion," or "Starion Energy") deceptive and unscrupulous marketing practices. Defendants engage in and perpetuate a fraudulent bait-and-switch scheme in order to induce consumers to switch from their local utilities or other energy suppliers to Starion Energy.  Defendants represent that customers will receive savings on their energy bills if they switch to Starion. However, these representations are a trap.  Defendants routinely hike up their customers' rates well above the market – even to two or three times as much as the customer's local

1

utility. Starion's rates are almost always substantially higher than the market. A customer who converts to Starion has no actual possibility of long-term savings and may even end up paying two to three times more for electricity than what he or she did before. Instead of benefitting from moving to Starion, a typical customer loses out – often paying hundreds or thousands of dollars more per year than before the switch.

2.     Defendants particularly target vulnerable consumers in low-income areas by engaging in aggressive and deceptive marketing blitzes, including misleading the consumers to believe that Starion is a public assistance program designed to help them with their energy bills,

3.     Starion has been investigated repeatedly for its unscrupulous marketing and sales practices and has had to pay fines on at least one occasion. After an investigation, the Maryland Public Service Commission concluded that Starion had committed numerous serious violations of state consumer protection laws – including enrolling customers without their consent to switch providers ("slamming"), failing to obtain proper licensing in certain jurisdictions, and engaging in false and misleading sales and marketing practices. For example, the Commission found 122 slamming violations, thousands of violations of Maryland's Door-to-Door Sales Act, and more than 200 customer complaints of false and misleading sales tactics. It observed that customers experienced significant increases in their electricity costs that were unrelated to market prices or conditions. The Commission fined the company a record $350,000 and ordered extensive additional sanctions.

4.     Starion has been the subject of so many consumer complaints that it has received an F rating from the Better Business Bureau.

5.     Starion's practices are no accident. Starion is only one of a series of similar schemes perpetrated by its principals. One of Starion's founders, Defendant Robert Zappone, previously ran what the Connecticut attorney general called a "one-stop shopping predatory lending scheme." In

2006, Mr. Zappone and his partners paid $750,000 to the State of Connecticut to settle charges that they had lured people with poor credit or limited English into their "Mortgage SuperCenter," falsified applications, and saddled them with loans that often went to the purchase of decrepit, overpriced houses sold by another Zappone company. Many of the buyers ended up filing for bankruptcy and losing their homes.

6.     Upon reaching the settlement, the Connecticut Attorney General Richard Blumenthal, Department of Banking Commissioner John P. Burke, and Department of Consumer Protection Commissioner Edwin R. Rodriguez issued a joint press release entitled *Banking Commissioner, Attorney General, DCP Announce $750,000 Settlement in Waterbury Home Purchase Scam*. The press release states that Zappone and his cohorts were alleged to have "tricked Waterbury consumers into buying at inflated prices dilapidated houses that had been cosmetically repaired. In addition, Blumenthal's lawsuit accused the companies and individuals, who also provided 'financing, of manipulating consumers' credit histories, charging improper fees, and other lending abuses." Mr. Blumenthal stated, in part:

> This money will compensate consumers victimized by this unconscionable scam. These unscrupulous operators turned the American Dream of homeownership into a nightmare, tricking consumers into buying houses that were literally falling apart. Today's settlement sends a powerful message: predatory lending and housing scams will not be tolerated in Connecticut.

7.     At Starion, Defendant Zappone – one of the "unscrupulous operators" identified in the press release – is in charge of recruiting and training Starion salespeople. Accordingly, he is largely responsible for the unconscionable and unscrupulous practices alleged again in this case.

8.     Plaintiff Diana Windley, on behalf of similarly situated customer-classes she seeks to represent, brings this lawsuit to redress Defendants' unlawful and unconscionable consumer practices in New York and the other jurisdictions where Starion does business.

3

9.     Defendants' practices emerge from and take advantage of the deregulation of the energy supply markets in New York and the other states and localities in Starion's supply area – Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Jersey, Ohio, Pennsylvania, and the District of Columbia.    Under these jurisdictions' deregulation laws, the supply portion of a consumer's energy bill is separated from the delivery portion. In theory, with the supply portion open to competition, customers can freely shop around for the best price on their energy supplies. But, by engaging in its bait-and-switch scheme, Starion subverts the consumer-friendly purpose of these laws and prevents its customers from making a free, informed choice.   In reality, customers would be far better off staying with their local utilities or another supplier than switching to Starion.

10.     Plaintiff brings this action on behalf of a subclass of Defendants' New York consumers under New York's consumer fraud law, NY Gen. Bus. Law § 349 and 349(d).

11.     Plaintiff also brings this action on behalf of a subclass asserting multi-state class claims for (i) breach of contract/breach of the covenant of good faith and fair dealing, (ii) unjust enrichment, and (iii) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).

12.     Through their deceptive, unconscionable, and unlawful practices, Defendants have bilked the classes out of millions of dollars.  Upon information and belief, the New York class alone consists of thousands or tens of thousands of current and former customers in New York, each of whom has sustained damages of as much as hundreds or thousands of dollars annually.

13.     Plaintiff brings this class action under Fed. R. Civ. P. 23 to recover damages, statutory penalties, and other relief for herself and the class of Starion customers who have suffered from Defendants' imposition of unreasonable and exorbitant energy prices in violation of the company's representations.  Only a class action will provide Plaintiff and the class with any possibility of relief.

Plaintiff and the class are therefore entitled to a class-wide remedy.

## JURISDICTION AND VENUE

14.     This Court possesses federal subject matter jurisdiction over the action pursuant to 28

U.S.C. § 1332(d) for the following reasons:

> (a)     the number of members of the proposed Plaintiff class is 100 or more;

> (b)     there is at least minimal diversity of citizenship between the Plaintiff class (named
> and unnamed) and the Defendants. Defendants are headquartered and have their primary
> place of business in Connecticut while Plaintiff and the class members are residents of
> New York and several other states;

> (c)     the amount in controversy – which may be calculated by aggregating the claims of
> the class members – exceeds the sum or value of $5 million.

15.     This Court also possesses federal question jurisdiction over the RICO claims pursuant to

28 U.S.C. § 1331 and supplemental jurisdiction over the remaining state law claims pursuant to 28

U.S.C. § 1367, because all claims arise from a common nucleus of operative fact.

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

17.     The wrongful acts Plaintiff complains of – Starion's imposition of excessive and

unreasonable rates in violation of Defendants' representations – occurred and were carried out in

this District and their effects were felt in this District.

## THE PARTIES

18.     **Plaintiff Diana Windley** is a resident of The Bronx, New York. In or about May 2013, Ms.

Windley enrolled as a Starion Energy customer because of the company's deceptive representations

and began to receive her electricity supplies from Starion. Because of the conduct alleged in this

case, Ms. Windley estimates that she incurred approximately $400 in overcharges in just a few short

months in the spring and summer of 2014. When Ms. Windley finally discovered Defendants' billing

practices and the fact that she was paying significantly more than she would be as a customer of her

local utility company, ConEdison, she terminated her service with Starion.

19.     **Defendant Starion Energy, Inc.** is a Delaware corporation with its principal place of business in Connecticut.  It provides electricity supply in New York and the other jurisdictions listed above.

20.     **Defendant Starion Energy NY, Inc.** is a Delaware corporation with its principal place of business in Connecticut.  On behalf of Defendant Starion Energy, Inc., it provides electricity supply to customers in New York.

21.     **Defendant Starion Energy PA, Inc.** is a Delaware corporation with its principal place of business in Connecticut.  On behalf of Defendant Starion Energy, Inc., it provides electricity supply to customers in Delaware, Illinois, Maryland, Massachusetts, New Jersey, Ohio, Pennsylvania, and Washington D.C.

22.     **Defendant Robert Zappone** is a resident of Connecticut and a founder of Starion. As alleged above, he is a principal architect of Defendants' consumer fraud scheme as well as other similar scams.

23.     **Doe Defendants 1-10** are other individual Starion founders, owners, principals, employees, or agents who have directly participated in and formulated Defendants' scheme.

24.     Defendants act in concert to commit the acts alleged herein.  Defendants bait customers such as Plaintiff and the class members to obtain their electricity supplies from Starion and then fail to deliver the promised savings.

## FACTUAL ALLEGATIONS

25.     In 1996, New York deregulated energy supply in the state.  Customers may now purchase electricity through "alternative" third-party suppliers while continuing to obtain delivery from their local public utilities. These private suppliers, known as energy service companies (or ESCOs), do not

have to file their rates with the Public Service Commission and do not have to justify their methods for setting their rates. In contrast to public utilities, state regulators do not have oversight of the rates charged by Starion. The intent of the deregulation law is to provide consumer choice and allow competition to drive down customer rates.

26.    Starion takes advantage of the regime in deregulated states such as New York by adopting deceptive and unconscionable business tactics. Defendants mislead consumers to believe that by switching to Starion they will save money over their local public utilities. In fact, soon after customers switch to Starion, their rates skyrocket, completely divorced from prevailing market conditions.

27.    Starion's website states that it offers "consistent, competitive products and rates." It promises "Simple straight forward, and transparent contracts and rates." Further, the website states that Starion's mission is to provide customers an opportunity to "Save Money." For example: "We are consumers just like you and understand the importance of saving every penny in today's economy. Understanding the importance of savings is what drives Starion Energy." And, says the website, because deregulation breaks the monopoly held by local utilities and frees consumers from the "standard rates" charged by these utilities, consumers have the choice to pursue energy savings with Starion. The website includes a customer testimonial about easy savings of nearly $200.

28.    With regard to Starion's variable rate plans, Starion's website states that the rate will change month to month "based on market conditions." It states that customers may enroll in the variable rate program "to take advantage of current market conditions of energy that we buy day to day." The clear implication is that Starion is purchasing energy at market rates, where vigorous competition ensures the lowest possible prices for its customers.

29.    Starion's representations are false and misleading. Its products are not competitively-priced

for the consumer and there is no actual possibility of meaningful savings. Starion consistently charges substantially more than the local utilities – often two to three times as much. Its rates bear no reasonable relationship to the energy markets. It does not tap the energy markets to pass on savings to the consumer but to enrich itself at the customer's expense.

30.     Starion also engages in aggressive door-to-door and telephone marketing blitzes, often targeted at low-income individuals and communities. Sales representatives' pitches to customers are scripted by the Company. For example, Plaintiff Windley was visited by multiple reps at different times, all of whom delivered substantially the same presentation.  During their sales pitches, reps present Starion as a "program" which will save consumers money over their local utilities.

31.     Starion's various statements are deceptive and inaccurate.  They fail to indicate that Starion's rates are generally substantially higher than its competitors and that customers are virtually assured of receiving far more expensive service by switching to Starion. Ordinary consumers subjected to the Company's marketing materials and sales pitches would believe that long-term savings on their energy bills were very likely.  They would have no reason to suspect that its prices typically far exceed the market and that savings are illusory.

32.     Starion's various representations and omissions regarding price are materially misleading to consumers and have the capacity to mislead.  Had Starion provided honest information and revealed it would charge exorbitant rates after an introductory period, no reasonable consumer would ever choose it as an energy supplier. No reasonable consumer would ever switch to Starion knowing that he or she will not realize meaningful savings but will be subjected to exorbitant rates.

### Plaintiff Diana Windley's Experiences With Starion

33.     Plaintiff Diana Windley resides in a low-income, predominantly minority neighborhood of the Bronx.  Over half of the population receives some form of public assistance.

8

34.     Beginning in or about 2012-2013, Ms. Windley's community was overrun with sales representatives from Starion Energy. The representatives were very persistent and aggressive and would generally not take no for an answer.

35.     These representatives gave a standardized presentation in which they described Starion as a "low-income program" (ie. a public assistance program) designed to help reduce consumers' energy bills. The representatives stated that ConEd was a "monopoly" which was ripping customers off and that Starion was helping consumers save money by introducing "competition."

36.     Starion sales agents repeatedly represented that switching would save consumers money. Although Ms. Windley turned Starion representatives away on multiple occasions, they kept returning to her residence to try to enroll her in Starion. On each occasion, they presented a substantially similar spiel. They each held a clipboard, which they often referred to or read from.

37.     Eventually, in or about May 2013, Ms. Windley succumbed and fell victim to Defendants' scheme.

38.     As part of Defendants' scripted sales pitch, representatives demanded to see Ms. Windley's and other consumers' ConEd bills. They insisted that Ms. Windley was paying way too high a rate, that ConEd was robbing her, that she would save money with Starion, and that her bills would go down if she switched to Starion.  Starion representatives did not present this as short-lived or temporary savings but meaningful financial relief. No one disclosed that the rate would be variable or could fluctuate. Instead, Ms. Windley was told that she would save five or ten dollars per month – or more than 10% of her bills, which typically ranged from $40 to $80.

39.     After being bombarded with such representations, Ms. Windley figured that there was no reason not to switch if Starion was really that much of a deal.  She believed that she was signing up for long-term energy savings.

40.    The Starion sales agent used a cell phone to sign Ms. Windley up for Starion on the spot via an automated telephone service. Ms. Windley never received a contract or written terms of service.

41.    In or about May 2014, Ms. Windley began to realize how switching to Starion was causing her bills to shoot through the roof. Ms. Windley's utility bill for the period from May 14 to July 15, 2014 included an electricity supply cost of 29.97 cents per kilowatt hour plus a $9.75 customer charge assessed by Starion. The bill was substantially larger than any of Ms. Windley's previous electricity bills with ConEd even though she was not consuming more electricity. **When Ms. Windley contacted ConEd, she was informed that Starion's electricity supply rate was approximately three times as much as the rate she would be paying with ConEd.** The ConEd representative explained that Ms. Windley had signed up with a company that was cheating people in this manner.

42.    In or about July 2014, Ms. Windley contacted Starion customer service about the overcharges. A representative offered Ms. Windley a modest partial refund but only if she signed a new written contract to obtain her energy supplies from Starion. Instead of knowingly signing up to continue to be cheated, she cancelled her service with Starion.

43.    During the period that she remained a customer of Starion, Ms. Windley sustained hundreds of dollars in overcharges for her electricity supply.

44.    Starion's misstatements and omissions caused Ms. Windley injury because she paid more for electricity than she otherwise would have. Ms. Windley would not have enrolled in Starion's service but for Defendants' deceptive and unconscionable marketing and business practices. Had Ms. Windley known that Starion's rates were substantially higher than those of her previous energy supplier, ConEd, she would not have enrolled with Starion. Ms. Windley has sustained economic injury caused by Defendants' misstatements and omissions.

10

45.     Similarly, the other members of the class have routinely paid substantially more for Starion service as compared with their previous suppliers and have not received the competitive rates and savings they have been told to expect by the company.

## PUBLIC COMPLAINTS AGAINST STARION

46.     Plaintiff's experience is not unique. The internet and public domain is full of allegations and grievances about Starion's marketing and price gouging scheme which echo Plaintiff's individual experiences as described in this complaint.  Consumers regularly complain that they were led to expect competitive prices and potential savings by Defendants' representations but that they are instead consistently being charged far more than they would be by their public utilities – often by double or more.  Over a span of mere months, customers' rates can even double or triple despite no corresponding rise in market prices.

47.     For example, as reported by the Chicago Tribune, a 71-year old customer in Chicago complained that two reps came to his door and signed him up for a Starion electricity plan that he did not recall agreeing to participate in.  His bill quickly spiked from about $50 on average to approximately $200 and, like Plaintiff Windley, he had no idea why. "All of a sudden I had these ridiculous prices," the customer said.

48.     As reported by the Washington Post, a low-income single mother in Washington, D.C. complained of practices eerily similar to those experienced by Ms. Windley. A Starion representative came to the consumer's apartment stating that she could lower the consumer's energy bills. The representative rattled off a few more sales points, demanded to see one of the consumer's energy bills with her local public utility, and told the consumer that switching to Starion would reduce her monthly energy bills. The consumer signed up over the representative's

cell phone on the spot. Within three months, the customer's Starion bill rose dramatically from $96 to $149. Another consumer drawn in by Starion's promises of discounted energy rates immediately saw her total power bill rise from approximately $30 (including both delivery and supply) to $89 ($58 to Starion for supply and $31 to the local public utility for delivery).

49.     In addition, customers have had difficulty canceling Starion service and have had to pay Starion's exorbitant energy prices for months even after seeking to cancel.

50.     According to these articles, reports, and complaints, Starion targets low-income and minority neighborhoods as well as poor and elderly individuals.

51.     Based on an extensive record of such complaints, the Better Business Bureau has given Starion an F rating. The Commerce Commission has given Starion one star, its worst possible rating.

### BASED ON THE PRACTICES ALLEGED HEREIN, NUMEROUS PUBLIC AUTHORITIES FORMALLY INVESTIGATE STARION AND THE MARYLAND PUBLIC SERVICE COMMISSION ISSUES A RECORD $350,000 FINE

52.     Starion has come under public investigation for its deceptive and unethical marketing and customer enrollment practices in numerous jurisdictions, including Connecticut, Delaware, Maryland, Chicago, and Washington, D.C.

        Connecticut

53.     In 2010, the Connecticut Department of Public Utility Control found that Starion violated several state statutes in connection with these practices. In order to settle the claims and maintain its electric supplier license, Starion agreed to make a $20,000 donation and represented that it was cleaning up its act. Clearly, it has not. Instead, it has unfurled its tentacles, expanding its sphere of operations and the breadth of its scheme to multiple states and localities.

        Washington, D.C.

12

54.     In 2013, the Washington, D.C. Public Service Commission (PSC) commenced a formal investigation into Starion's business and solicitation practices. Many District consumers complained about Starion's unlawful, misleading, and deceptive sales practices, including "slamming" violations (switching customers from their local public utilities without their express approval) and false promises of lower utility bills. On July 30, 2013, the Commission ordered Starion to cease and desist from any activities in violation of Washington, D.C.'s consumer protection laws. The case eventually settled in 2014. The settlement is aimed at ensuring that Starion revises its marketing materials and business practices within the District in order to curtail its widespread violations of Washington D.C. consumer protection laws.

55.     As part of the settlement, Starion representatives will be required to distribute written documents (customer contract forms, terms and conditions of service, and a welcome letter) to consumers during the solicitation process and to make affirmative disclosures including that Starion does not guarantee savings and that a customer's energy rates may fluctuate. The written materials will contain specific language – agreed to by the parties – including a description of Starion's variable rate plan, "a huge area where there has been customer confusion, where there has been allegation of misrepresentation and such." In addition to Starion's written contracts and marketing materials, the parties will work together to revise the script for third party verifications of customer enrollments. Further, customers who allege slamming, misrepresentation, or rate confusion will be permitted to cancel their Starion contracts without a termination fee. Customers who filed complaints with the PSC or D.C. Office of People's Counsel will be eligible for refunds. Finally, Starion will make a $100,000 contribution to the Greater Washington Urban League.

56.     During the settlement approval and enforcement process, the PSC confirmed that four hundred seventy-five (475) Washington, D.C. consumers had filed complaints against Starion with

the PSC alone.

Maryland

57.    On March 7, 2014, the Maryland Public Service Commission found that Starion had engaged in multiple practices that violated state consumer protection law and regulations. These included 122 "slamming" violations, thousands of violations of Maryland's Door to Door Sales Act, and over 200 customer complaints of false and misleading sales tactics. It found that the Company had experienced "pervasive marketing shortcomings" and had "provided essentially no oversight to those representatives marketing on its behalf." In fact, Starion's record of equivalent violations in multiple jurisdictions demonstrates that the problem was not a mere failure of oversight (the Company line to avoid more severe sanctions) but a Company-wide scheme.

58.    As in the Bronx and other locales, Starion initiated a door-to-door marketing blitz in Maryland during which representatives signed customers up via an automated telephone call. Starion provided a script to representatives to use during their sales presentations to consumers. Representatives' widespread misrepresentations included that they were offering a program provided by SMECO (the local public utility in Southern Maryland) to save customers 15% on their electric bills. In addition, Starion reps left door hangers representing that Starion could provide a "FREE" lowering of customer's bills and that deregulation allowed "ALL Future SMECO bills to be reduced."

59.    The Commission noted that many Maryland customers were saddled with substantially higher prices with Starion than they had any reason to expect to pay. Starion attributed this partly to a decision to pass on high wholesale costs in New England during the winter of 2012-2013 to all of its customers nationwide. The Commission labeled this decision "dubious" and misleading. "As a result, Starion's variable rate Maryland customers experienced a significant increase in their

14

electricity costs for reasons unrelated to electricity prices within Maryland's [Regional Transmission Organization]... Although we acknowledge that we lack direct authority to regulate Starion's pricing policies, we are nonetheless concerned that Maryland customers may not be fully informed that their variable rate may be calculated based upon market prices across such a wide geographic area.  Starion has an obligation to clearly disclose the terms of its service to its Maryland customers."

60.     The Commission further found a "clear pattern of repeated misrepresentations by Starion representatives to potential customers, the vast majority consisting of the Starion representative falsely claiming to be affiliated with the customer's current utility, or the Starion representative improperly guaranteeing customers that switching to Starion's service would lower their monthly electric bills." As it concluded, "the record makes unmistakably clear that Starion committed more than one hundred violations regarding slamming or false and deceptive statements to customers." The Commission characterized these violations as part of an "ongoing pattern" of conduct.

61.     Based on these and other violations, the Commission imposed a record fine of $350,000 and other sanctions and conditions against Starion. The Commission has also determined to closely review and monitor Starion's marketing practices going forward. Starion must submit all contract templates and marketing materials (such as sales scripts) to be used in Maryland for prior approval by the Commission.

62.     Starion's attorneys at Greene Hurlocker in Richmond, Virginia recently published a list of lessons to be learned from the record-setting fine in Maryland. Starion's lawyers attributed its pattern of consumer protection violations to "lack of oversight and control over its sales and marketing representatives during a time of what Starion termed as rapid and unexpected growth in the Maryland electricity market." This spin is again belied by the Company's concerted multi-state

scheme and provision of scripted marketing materials to its agents.

63.     Among the lessons, according to Starion's counsel: "Retail Suppliers Should Fully Disclose Terms and Conditions of Service Regarding Variable Rates" and "Retail Suppliers Absolutely Cannot Make Misrepresentations When Communicating With Customers." As the author commented, Starion "did not dispute" that its representatives engaged in a pattern of repeated misrepresentations. "In fact, the Commission noted that Starion [through its general counsel] conceded that the number of misrepresentations could exceed 10,000, although we understand that she was merely reflecting that Starion could not verify how often these misrepresentations occurred."

64.     In reality, Starion was fully aware that such misrepresentations were built into every consumer solicitation, easily amounting to thousands of interactions or more.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 to recover damages and other relief on behalf of herself and a class of all Starion customers from the Company's inception in 2009 through the date of final judgment. The class consists of two subclasses – (a) a multi-state RICO and common law subclass; and (b) a New York subclass, limited to customers in New York.

66.     Defendants have engaged in an ongoing unlawful practice of deceptively inducing customers to switch energy providers to Starion and to retain their Starion accounts by misrepresenting that they will receive competitive market-based rates and/or will likely save money on average over their local public utilities or other alternative providers.

67.     Starion's pricing excesses were not limited to particular time periods or locations. Rather, all Starion customers experienced elevated energy supply prices grossly out of line with the rates charged by their local utilities.

68.    This action is properly brought as a class action for the following reasons:

(a)  The class consists of at least thousands of members and is so numerous that joinder of all members is impractical.

(b)  There exist questions of law and fact common to the class which predominate over any questions affecting only individual members, including:

(1)  whether Defendants charged exorbitant undisclosed energy supply rates in violation of its representations to the class members;

(2)  whether Defendants' conduct violates New York's consumer protection laws,

(3)  whether Defendants breached their contracts with the class members and/or the implied covenant of good faith and fair dealing,

(4)  whether Defendants' conduct has resulted in the unjust enrichment of Starion, to the detriment of the class members, requiring restitution and/or disgorgement of unjustly retained monies,

(5)  whether Defendants engaged in a pattern of racketeering activity that caused injury to consumers,

(6)  whether Defendants should be enjoined from continuing their unlawful practices, and

(7)  whether Defendants are liable to the Class and the measure of damages.

(c)  Plaintiff's claims are typical of the claims of the class.  In common with all class members, Plaintiff was injured by Defendants' imposition of exorbitant undisclosed energy supply rates that were not commensurate with the market.  Plaintiff has suffered the same kind of harm as other class members.

(d)  Plaintiff has hired counsel able and experienced in class action litigation and will fairly and adequately protect the interests of the class.

(e)  A class action is superior to other available methods for the fair and efficient adjudication

17

of the controversy. Individual damages to any one class member may be relatively small, making the

expense of individual litigation prohibitive or impractical for class members.

69.     Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because

Defendants have acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

<u>COUNT I</u>

**(VIOLATION OF N.Y. GENERAL BUSINESS LAW § 349
NEW YORK CONSUMER PROTECTION STATUTE)
New York-Only Class
AGAINT DEFENDANTS STARION ENERGY, INC AND STARION ENERGY NY, INC.**

70.     Plaintiff repeats and realleges the allegations contained in the preceding and succeeding

paragraphs of this complaint and incorporates such paragraphs by reference

71.     Through the conduct described above, Defendants engaged in deceptive acts and practices

that resulted in injury to Plaintiff and the class members.

72.     Defendants represented that their energy supply rates would be market-based and competitive

and/or that customers would save money over their local public utilities. Defendants' actual rates

were excessive and unreasonable and bore no reasonable relationship to market conditions.

73.     Defendants committed a deceptive and unlawful trade practice by inducing consumers to

switch from other providers and/or to remain with Starion and then proceeding to charge them

exorbitant rates far above the amounts charged by consumers' local utilities.

74.     Defendants wrongfully concealed, suppressed, and omitted to disclose that its average rates

were far higher than the public utilities and that the main goal of the so-called "competitive" "market-

based" pricing system was not to save money on behalf of Plaintiff and the class members but to

18

fraudulently reap undue profits at their expense. While Defendants coveyed the impression that all boats would rise together – that Starion derived its business success from finding energy savings for the benefit of its consumer base – in fact, Starion set itself up in an adversarial relationship with its customers, in which it would take advantage of them for as long as possible.

75.     Defendants' misrepresentations and omissions had the capacity to mislead Plaintiff and the members of the class into believing (i) that Starion's rates would be significantly lower than the amounts Starion actually charged, and (ii) that these rates would be substantially equivalent to or better than the rates charged by Plaintiff's and the class members' local public utilities. Plaintiff and the class members were injured as a result.

76.     Accordingly, Defendants have violated N.Y. Gen. Bus. L. 349 and are liable to Plaintiff and the class members for damages in an amount to be determined at trial but not less than $50 for each violation, such amount to be trebled due to Defendants' willful conduct, plus reasonable attorney's fees. Further, Defendants should be enjoined from continuing their deceptive and unlawful marketing scheme. In particular, Defendants should be enjoined from representing that its rates are competitive and market-based and that customers are apt to save money by switching to Starion, from indicating that Starion is a low-income assistance program, and from omitting and failing to disclose that its rates are substantially higher than those of the public utilities or those otherwise available in the market. Unless enjoined by this court, Defendants will continue their unlawful practice of charging excessive undisclosed rates on Starion customers.

## COUNT II

### (VIOLATION OF N.Y. GENERAL BUSINESS LAW § 349-d
ENERGY SERVICES COMPANY CONSUMERS BILL OF RIGHTS)
New York-Only Class
AGAINST DEFENDANTS STARION ENERGY, INC AND STARION ENERGY NY, INC.

77.     Plaintiff repeats and re-alleges the allegations contained in the preceding and succeeding paragraphs of this complaint and incorporates such paragraphs by reference.

78.     N.Y. Gen. Bus. L. §349-d(2) provides: "Any person who sells or offers for sale any energy services to a customer for or on behalf of an ESCO shall (a) properly identify himself or herself and the energy services company or companies which he or she represents; (b) explain that he or she does not represent a distribution utility; (c) explain the purpose of the solicitation; (d) provide each prospective customer with a copy of the 'ESCO consumers bill of rights' developed by the public service commission, in consultation with the Long Island power authority, the state consumer protection board and the department of law; and (e) provide any written materials, including contracts and the 'ESCO consumers bill of rights', in the same language utilized to solicit the prospective customer."

79.     N.Y. Gen Bus. L. §349-d(3) provides: "No person who sells or offers for sale any energy services for, or on behalf of, an ESCO shall engage in any deceptive acts or practices in the marketing of energy services."

80.     Under N.Y. Gen Bus. Law. §349-d(8), any contract for energy services which fails to comply with the terms of §349-d is "void and unenforceable as contrary to public policy."

81.     Defendants knowingly and willfully misrepresented that Starion's rates were market-based and competitive and that Starion was a "program" designed to save consumers money on their energy bills. At the same time that Defendants affirmatively misled consumers to believe that they would save money with Starion, Defendants knowingly and willfully omitted and failed to disclose that Starion's rates are substantially higher than those charged by consumer's local public utilities or otherwise available on the market.

82.     N.Y. Gen Bus. Law. §349-d(10) provides that "any person who has been injured by reason

20

of any violation of this section may bring an action in his or her own name to enjoin such unlawful act or practice, an action to recover his or her actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff."

## COUNT III

**(VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(c) – CIVIL RICO)**
**Multi-State Class of Starion Customers in Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, and Washington, D.C.**
**AGAINST DEFENDANT ZAPPONE AND DOE DEFENDANTS**

83.     Plaintiff repeats and re-alleges the allegations contained in the preceding and succeeding paragraphs of this complaint and incorporates such paragraphs by reference.

### The RICO Enterprise

84.     Defendants Starion Energy Inc., Starion Energy NY, Inc., and Starion Energy PA, Inc. together form an association-in-fact enterprise (the "Starion Enterprise" or "Starion") within the meaning of 18 U.S.C. § 1961(4). The affairs of the enterprise affect interstate commerce through a pattern of racketeering activity.

85.     The three members of the enterprise are interrelated corporations. Starion Energy NY, Inc., and Starion Energy PA, Inc. are subsidiaries of Starion Energy, Inc. Starion Energy NY, Inc. provides electricity supply to customers in New York on behalf of Starion Energy, Inc. Similarly, Starion Energy PA, Inc. provides electricity supply to customers in Delaware, Illinois, Maryland, Massachusetts, New Jersey, Ohio, Pennsylvania, and Washington D.C. on behalf of Starion Energy, Inc. All three entities share a common place of business.

86.     The three members of the Starion Enterprise have associated together with sufficient longevity to supply electricity to consumers in nine states and the District of Columbia.

87.     The Starion Enterprise has the purpose of providing energy to consumers in nine states and the District of Columbia. As is set forth in detail below, Defendants Robert Zappone and Does 1-10 conduct and operate the affairs of this enterprise through a pattern of racketeering activity.

88.     Defendant Robert Zappone is a person within the meaning of 18 U.S.C. § 1961(c). He is a founder of Starion and is in charge of recruiting and training its salespeople. By virtue of these positions, and as further described herein, Zappone participates in the operation or management of Starion and played an integral role in formulating and implementing the fraudulent scheme alleged above.

89.     Defendants Does 1-10 are people within the meaning of 18 U.S.C. § 1961(c). They are individual Starion founders, principals, employees, or agents who have participated in the operation or management of Starion and formulated Defendants' scheme to defraud consumers.

90.     Zappone and Does 1-10 direct the affairs of Starion and have used it as an instrumentality to carry out a multi-year, multi-state fraudulent scheme to induce consumers to purchase overpriced energy services. As described throughout the Complaint, Starion engages in false and deceptive marketing practices designed to convince consumers that switching to Starion will reduce their energy bills. For example, Starion's website touts its "competitive products and rates," and declares that Starion's mission is to provide consumers an opportunity to "Save Money." Starion also engages in aggressive door-to-door sales and telephone marketing blitzes. During these blitzes, salespeople have described Starion as a "program" designed to save consumers money. They have also falsely claimed that Starion is affiliated with the consumer's local utility. The overriding message of Starion's internet, phone, and door-to-door marketing campaigns is that switching to Starion will save

consumers money.

91.     In reality, Starion's energy services are markedly more expensive than those of the public utilities from which consumers switch to Starion. Starion does not disclose to consumers that the rates it charges are not tied to local energy markets. Nor does Starion fully disclose the methodology it uses to arrive at such inflated rates. In many instances, Starion has not even provided consumers with written contracts or terms of service.

92.     When consumers have attempted to cancel Starion's services, Starion has been unresponsive or has tried to convince consumers to re-enroll, causing consumers to pay Starion's exorbitant energy prices for months after seeking to cancel.

93.     Starion's misrepresentations were material to members of the class. As a result of the fraudulent advertising practices alleged herein, consumers paid far more for energy than they otherwise would have. No reasonable consumer seeking to save money would enroll in Starion given accurate information regarding its pricing practices.

### The Pattern of Racketeering Activity: Zappone and Does 1-10 Regularly Commit Acts of Mail Fraud and Wire Fraud In Furtherance of Their Fraudulent Scheme

94.     Defendants Zappone and Does 1-10 routinely committed mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. Zappone and Does 1-10 devised and participated in Starion's scheme to induce customers to enroll in Starion's energy services through the misrepresentations alleged above and to jack up their electricity rates well above market prices. The use of the wires and the mails in furtherance of Starion's fraudulent scheme was reasonably foreseeable to Zappone and Does 1-10.

95.     Specifically, Zappone recruited and trained salespeople, whom Starion deployed to engage in scripted door-to-door solicitations and telephone solicitations. During these solicitations,

23

salespeople—reading from their Starion scripts—falsely represented to consumers that switching from their local utility to Starion would save them money. After swaying these unwitting consumers, salespeople used cell phones to call an automated service and immediately enroll the consumers with Starion. Each of these phone calls constituted an act of wire fraud and a predicate act of racketeering under 18 U.S.C. § 1961.

96.   Zappone and Does 1-10 committed documented acts of wire fraud at least as early as 2010, when the Connecticut Department of Public Utility Control—the first of many state agencies to censure Starion—found that Starion had violated several state consumer protection statutes.

97.   One such predicate act of wire fraud occurred in or about May 2013 when Ms. Windley enrolled with Starion. Prior to enrolling, several Starion salespeople had made solicitations at Ms. Windley's door, each representing that Ms. Windley would save money on her energy bills by switching to Starion. On the day Ms. Windley signed up, in or about May 2013, a Starion salesperson used a cell phone to immediately enroll Ms. Windley via an automated telephone service.

98.   As founders of Starion and/or individuals who participate in the management of Starion, Defendants Zappone and Does 1-10 also should have reasonably foreseen that customers would call Starion's customer service agents to inquire about their inflated energy bills. During these phone calls, Starion agents offered partial refunds to customers on the condition that they enter into new contracts with Starion. Each customer service call constituted wire fraud and a predicate act of racketeering under 18 U.S.C. § 1961.

99.   One such act of wire fraud occurred in or about July 2014 when Ms. Windley called Starion customer service to inquire about her inflated energy bill. During this phone call, a representative offered Ms. Windley a modest partial refund on the condition that she sign a new written contract with Starion. Unwilling to continue purchasing Starion's overpriced services, Ms. Windley declined.

100.    By virtue of their positions at Starion, Defendants Zappone and Does 1-10 also should have reasonably foreseen that Starion's website would transmit fraudulent statements through the wires in furtherance of their scheme to defraud. Starion's website attests to Starion's "consistent, competitive products and rates," and promises "Simple straight forward, and transparent contracts and rates." It further states that consumers' energy rates will change month to month "based on market conditions." These and other material misrepresentations and omissions on Starion's website constitute wire fraud and predicate acts of racketeering under 18 U.S.C. § 1961(c).

101.    As founders of Starion and/or individuals who participate in the management of Starion, Defendants Zappone and Does 1-10 also should have reasonably foreseen that many Starion customers would receive their utility bills via mail. These bills not only served as a means for Starion to effectuate its scheme of charging customers overpriced energy rates, but also permitted Starion to collect an additional "customer charge." Each utility bill that was placed in the mail served Starion's scheme to defraud consumers. The act of mailing each bill constituted mail fraud and a predicate act of racketeering under 18 U.S.C. § 1961.

102.    One such act of mail fraud occurred in or about July 2014, when Ms. Windley received her utility bill. In furtherance of Starion's scheme, Starion caused ConEd to mail the bill containing exorbitant and undisclosed energy supply charges. These rates were approximately three times more than what ConEd would have charged for equivalent services. In addition, Starion tacked on an unexplained $9.75 "customer charge."

103.    As founders of Starion and/or individuals who participate in the management of Starion, Defendants Zappone and Does 1-10 also should have reasonably foreseen that the wires would be used to send utility bills to those customers who received their bills online. Each online utility bill facilitated Starion's scheme to defraud consumers. The act of sending each bill constituted wire fraud

25

and a predicate act of racketeering under 18 U.S.C. § 1961.

104.    As set forth above, the Maryland authorities affirmatively found that Starion has engaged in a "clear pattern" of misrepresentations to consumers.

105.    The predicate acts specified above constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5) and § 1962(c). The class members have been subjected to the racketeering activity alleged herein for a period spanning more than two years, beginning at least as early as 2010, when the state of Connecticut investigated Starion, and continuing through the present. Each class member enrolled in Starion because Starion falsely and deceptively advertised to class members that switching to Starion would save them money on their energy bills.

106.    The pattern of racketeering acts described herein is integral to the affairs and functions of Starion and comprises an essential element of Defendants' fraudulent scheme. The racketeering acts Zappone and Does 1-10 committed as participants in the operation and management of Starion all involved similar methods (false advertising; energy bills containing Starion's overpriced fees), had a similar purpose (to deceive consumers into enrolling in Starion), involved similar participants (Zappone and Does 1-10, who trained and directed Starion's salespeople), and resulted in a similar impact on class members (exorbitant energy bills). As evidenced by the parade of state agency investigations of Starion, the predicate acts alleged herein represent the regular and ongoing way of conducting Starion's business.

107.    As a result of Defendants Zappone and Doe's violation of 18 U.S.C. § 1962(c), Plaintiff and class members were fraudulently induced into paying for Starion's overpriced energy supply services.

108.    Under 18 U.S.C. § 1964(c), Plaintiff and class members are entitled to three times the damages they sustained and the cost of suit, including a reasonable attorney's fee.

## COUNT IV

### (BREACH OF CONTRACT/
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)
#### Multi-State Class of Starion Customers in Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, and Washington, D.C. AGAINST DEFENDANTS STARION ENERGY, INC., STARION ENERGY NY, INC., and STARION ENERGY PA, INC.

109.    Plaintiff repeats and re-alleges the allegations contained in the preceding and succeeding paragraphs of this complaint and incorporates such paragraphs by reference.

110.    As a matter of standard practice, Defendants breached their affirmative representations that customers would save money by switching to Starion.

111.    Starion's consumer contracts should be deemed to contain an implied term mandating a reasonable price. In this case, a reasonable price would be the prevailing market rates in effect during the applicable class period. The best approximation of such a reasonable, market price is the rates charged by the class members' local public utilities.

112.    Defendant Starion breached this implied contractual term by charging Plaintiff and the class members unreasonable and exorbitant prices well above prevailing market rates.

113.    In addition, every contractual arrangement inherently carries with it a covenant of good faith and fair dealing. Under this covenant, we are not to suppose that one party is put at the mercy of the other but will read in any necessary conditions to ensure a mutuality of obligation under fair terms.

114.    Encompassed within Defendants' obligation to act in good faith were any promises which a reasonable person in Plaintiff's or the class members' shoes would be justified in understanding were included. The covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Even where a contract contemplates the exercise of discretion by one party, this pledge

includes a promise not to act arbitrarily or irrationally in exercising that discretion.

115.    When a contract contains an indefinite price term – such variable "market-based" pricing – the seller does not have unfettered discretion to set the price. Rather, under the covenant of good faith and fair dealing, the seller must act in good faith and set a reasonable price.

116.    Here, Defendants have failed to satisfy this obligation. Instead of setting their rates in good faith in line with the market, Defendants have unilaterally imposed exorbitant undisclosed rates on its customers, including Plaintiffs and the members of the class. In actuality, Defendants' rates bear no reasonable relationship to market conditions. While Defendants represent that, on average, their rates will be competitive with and/or undercut the market (as represented by the local public utilities that Starion customers are induced to switch from), in reality Starion's rates generally far exceed that market – by as much as 200% per month.

117.    Starion's rates do not fluctuate in accordance with market conditions. Regardless of what the market does, the rates generally remain on an upward trend even when market rates decline.

118.    Starion knows that its customers have an expectation of savings on their energy bills by switching to Starion and deliberately cultivates and exploits this expectation. At minimum, customers are led to expect pricing competitive with the market. Starion is fully aware that its prices are invariably higher than the market would bear. It sets its rates not in accordance with market factors but in order to continually maximize its profits at its customers' expense.

119.    Under the covenant of good faith and fair dealing, the court should read in the applicable price properly paid by the class members for Starion's services as a reasonable, market-based rate – that is, the rates charged by the class members' local public utilities during the class period. All monies paid above this reasonable amount should be restored to the class as damages.

120.    Plaintiff and the class have been damaged by Starion's breach of its contractual obligations,

28

including the covenant of good faith and fair dealing, in an amount to be determined at trial.

## COUNT V

### (UNJUST ENRICHMENT)
**Multi-State Class of Starion Customers in Connecticut, Delaware, Illinois, Maryland, Massachusetts, New Jersey, New York, Ohio, Pennsylvania, and Washington, D.C.**
**AGAINST ALL DEFENDANTS**

121.  Plaintiff repeats and re-alleges the allegations contained in the preceding and succeeding paragraphs of this complaint and incorporates such paragraphs by reference.

122.  Because of the wrongful activities described above, including charging Plaintiffs exorbitant undisclosed rates grossly out of line with market conditions, Defendants have received money belonging to the Plaintiffs and the class.

123.  By collecting exorbitant and unreasonable rates from Starion customers, Defendants have benefited from receipt of the excessive rates, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.

124.  Defendants have reaped illegal profits and unjustly enriched themselves at the expense of Plaintiffs and class members.

125.  As a result of Defendants' imposition of these excessive and unreasonable energy rates, Defendants must account to the Plaintiff and class members for such unjust enrichment and disgorge their unlawful profits as restitution to the class.

126.  By reason of the foregoing, Plaintiff and the class have suffered money damages in an amount to be determined at the trial of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the class pray for judgment:

A.      declaring this action to be maintainable as a class action;

29

B.     appointing Plaintiff as the representative of the Class and her counsel as Class Counsel;

C.     awarding compensatory damages to Plaintiff and the class members;

D.     awarding treble damages pursuant to law, and all other actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class Members are entitled;

E.     enjoining defendants from continuing to implement their unlawful and illegal trade practices and schemes, and granting all injunctive relief appropriate and necessary to remedy Defendants' wrongful conduct and to prevent the wrongful conduct from continuing;

F.     awarding Plaintiff all costs and disbursements, including attorneys' fees, experts' fees, and other class action related expenses;

G.     awarding pre-judgment and post-judgment interest to Plaintiff and the class members on their damages;

H.     awarding total damages in excess of $50,000,000; and

I.     granting such other and further relief as may be just and proper.

**Jury Demand**

Plaintiff and the class demand a trial by jury of all issues.

Dated:     November 13, 2014

                         SANFORD HEISLER, LLP

By:     _____

                         Andrew Melzer
                         Jeremy Heisler
                         1350 Avenue of the Americas, 31st Fl.
                         New York, NY 10019
                         Tel: (646) 402-5650
                         Fax: (646) 402-5651
                         jheisler@sanfordheisler.com
                         amelzer@sanfordheisler.com
                         *Counsel for Plaintiff and the Class*

30